## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**HARRY L. ALCORN,**
           **Plaintiff,**

**vs.**                                                    **Civ.  No. 01-957 MV/RLP**

**JO ANNE B. BARNHART,**
**Commissioner of Social**
**Security Administration,**

           **Defendant.**

### UNITED STATES MAGISTRATE JUDGE'S
### ANALYSIS AND RECOMMENDED DISPOSITION[1]

### I.  Procedural Background

1.      Plaintiff, Harry L. Alcorn ("Plaintiff" herein), filed an application for Disability Insurance

Benefits under Title II of the Social Security Act on March 24, 1999, alleging that he had been

disabled since February 23, 1999.  His application was denied at the first and second levels of

administrative review.

2.      A hearing was conducted by an Administrative Law Judge (ALJ herein) on November 30,

2000.  In a decision rendered on February 20, 2001.  The ALJ found that Plaintiff had a "severe"

impairment of chronic low back pain that did not meet or equal a listed impairment.  He then assessed

Plaintiff's testimony regarding the severity of his pain complaints as not entirely credible, and found

that despite his severe impairment, he retained the residual functional capacity for a full range of

sedentary work.  The ALJ applied the Medical Vocational Guidelines ("Grids" herein) and found that

[1]Within ten (10) days after a party is served with a copy of these proposed findings and
recommendations, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to such proposed
findings and recommendations.  A party must file any objections within the ten (10) day period if that party
seeks appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate
review will be allowed.

Plaintiff was not disabled.  The Appeals Council declined to review the ALJ's decision, making that decision the final decision of the Commissioner.

3.      The matter is now before the court on Plaintiff's Motion to Reverse for an award of benefits, or in the alternative, to Remand for additional proceedings.  (Docket No. 8).[2]

4.      Plaintiff raises the following substantive issues:  1)Whether the ALJ failed to analyze Plaintiff's "severe" pain producing impairments; 2) Whether the ALJ inappropriately applied the Medical-Vocational Guidelines, and 3) Whether the ALJ's credibility finding was conclusory, and lacking in the specificity required by S.S.R. 96-7p.

### III.  Standard of Review

5.      The Commissioner's decision to deny benefits must be supported by substantial evidence in the record.   The "substantial evidence" standard, codified at §42 U.S.C.  405(g), has been defined as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' It must be 'more than a mere scintilla.' "  **Broadbent v. Harris**, 698 F.2d 407, 414 (10th Cir.1983) (per curiam) (citations omitted),  but it need not be a preponderance.  **Trimiar v. Sullivan**, 966 F.2d 1326, 1329 (10th Cir. 1992).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  **Musgrave v. Sullivan**, 966 F.2d 1371, 1374 (10th Cir. 1992).  If supported by substantial evidence, the factual findings of the Commissioner are conclusive and must be affirmed.   **Clifton v. Chater**, 79 F.3d 1007, 1009 (10th Cir. 1996).  Although as a reviewing court I  cannot weigh the evidence and may not substitute my discretion for that of the agency, I nevertheless have the duty to meticulously examine the record and make my determination

---

[2]In a separate proceeding Plaintiff was found disabled as of February 21, 2001, and therefor entitled to disability benefits commencing in August, 2001.  (Docket No. 13, Ex. A).

on the record as a whole.  **Dollar v. Bowen**, 821 F.2d 530, 532 (10th Cir.1987).  I must also

determine whether the Commissioner used the correct legal standards.  **Glenn v. Shalala**, 21 F.3d

983 (10th Cir. 1994);  **Hamilton v. Secretary of Health and Human Services**, 961 F.2d 1495,

1497-98 (10th Cir. 1992); **Pacheco v. Sullivan**, 931 F.2d 695, 696 (10th Cir. 1991).

## IV.   Medical Facts

6.      Plaintiff began seeking medical care for complaints of back pain on July 17, 1998.[3]  (Tr. 170).

 The medical record establishes that Plaintiff has a pain producing back condition affecting all levels

of his spine.[4]  His complaints were initially treated with pain medication (Acetamenaphen with

codeine[5]) and a muscle relaxant (Naproxen).  (Tr. 170, 165).   He was advised to do no lifting (Tr.

166) and eventually encouraged to seek employment that did not involve heavy labor.  (Tr. 164).

7.      Plaintiff quit his job as a punch-press operator on February 8, 1999, because of continued

severe low and mid back pain.  His physician's treatment note of that day indicates that he was

writhing in pain.  (Tr. 28-29, 116, 163).   Plaintiff was given Percocet on February 8, and Demerol[6]

---

[3]All of Plaintiff's medical care has been provided by the Veterans' Administration, either at a clinic in his home town of Raton, New Mexico, or at the regional Veterans' Hospital in Albuquerque, New Mexico.

[4]MRI evaluation on September 23, 1999, disclosed prominent Schmorl's nodes at all levels of T12-L5, mild disc protrusion at T12-L1, L3-4, and L4-5 without associated spinal cord compression, and facet arthropathy at L3-S1  (Tr. 179-180).  Follow up thoracic spine x-rays taken January 18, 2000, showed degenerative disc disease described as  anterior osteophyte formation, disc space narrowing and end plate sclerosis in the proximal thoracic spine and at T11-12 and T12-L1. (Tr. 223).   Cervical spine x-rays on January 8, 1999, disclosed mild degenerative disc disease at C5-6 with small anteroinferior osteophyes at C4 and C5.  (Tr. 178). Repeat cervical x-rays taken on  March 18, 2000, demonstrated minimal neural foramen narrowing at C3 bilaterally, possibly caused by facet hypertrophy and degenerative changes at the C3-C4 disc space.  (Tr. 222).

[5]Generic name for Tylenol with Codeine, a narcotic pain medication indicated for relief of  mild to moderately severe pain.  1999 Physicians' Desk Reference, at 2252-2253.

[6]Demerol is a narcotic pain medication indicated for relief of moderate to severe pain.  1999 Physicians' Desk Reference, at 2780.

on February 9 for control of his pain complaints. (Tr. 163). He was again advised to seek work that did not involve so much physical labor. (Tr. 158, 163). Plaintiff sought the assistance of the New Mexico Division of Vocational Rehabilitation. His file was subsequently closed because "an employment outcome was not foreseen due to the extent of his physical limitations as per letter from (his treating physician)." (Tr. 207).

8. By February 22, 1999, Plaintiff was taking three narcotic pain medications, Meperidine[7], Hydrocodone/Acetaminophen[8], and Acetaminophen with Codeine. Over the next two months, additional medications were prescribed, including Diazepam[9] and Methocarbamol[10]. (Tr. 161).

9. On March 24, 1999, Plaintiff was interviewed by an employee of the Social Security Administration who noted that he "seemed to be in a lot of pain. He could not sit up straight. He continually moaned as if he was in pain. He was perspiring." (Tr. 110).

10. By April 30, 1999, Plaintiff's physicians had determined that his condition was not operable, and referred him to the anesthesia pain clinic. (Tr. 161). On May 17, 1999, he was provided with a TENS unit and given a facet injections The injections produced an immediate lessening of his pain. (Tr. 200, 241). By June 19, Plaintiff had discontinued use of all pain medications except Percocet and ibuprofen. (Tr. 198). Plaintiff was reevaluated at the Anesthesia Pain Clinic on June 28. (Tr. 239). He indicated that there had been improvement in "burning/stabbing pain," but he still

---

[7]Generic name for Demerol. 1999 Physicians' Desk Reference, at 2780.

[8]Generic name for Vicodan, a semisynthetic narcotic indicated for relieve of moderate to moderately severe pain. Id. at 1486.

[9]Generic name for Valium. The medical chart indicates that Valium was prescribed for the treatment of back pain. It is indicated for use as an adjunct for relief of skeletal muscle spasms. Id. at 2735.

[10]Generic name for Robaxin, an adjunct to rest, physical therapy and other measure for the relief of acute, painful musculoskeletal conditions. Id. at 2646.

complained of low back pain, described as "tightness," which worsened with sitting. On exam, he had occasional spasm, increased low back pain with flexion at 10 degrees and low back tightness on extension to 30 degrees. His physicians diagnosed facet arthropathy and ordered repeat facet injections. Plaintiff was also told to continue using Percocet, and was given a prescription for Baclofen, a muscle relaxant[11].

11.     By January 10, 2000, Pain Clinic records indicate that Plaintiff continued to experience considerable residual pain, with little benefit from narcotic pain medication and no lasting relief from prior facet injections. On examination, his pain was aggravated with extension, with a different pain experienced with forward flexion. Additional facet injections were scheduled. (Tr. 220). Those injections were administered on March 6, 2000. (Tr. 219, 235). On April 21, 2000, Plaintiff's physician indicated that he was doing much better with the injections, and overall seemed to be doing well despite complaints of continued back soreness. (Tr. 218).

12.     In May 2000, Plaintiff was treated for ankle pain caused by degenerative changes, and mid-low back pain. On exam he had decreased range of motion in his cervical and lumbar spine and pain on back extension. His back spasm had resolved with use of Baclofen. He received more facet injections. (Tr. 214-215). On examination in June 2000, he stated that he had received three-weeks relief from the injections, with return of significant low back pain and low to mid thoracic pain thereafter. He received additional facet injections (Tr. 212-213, 232).

13.     In June 2000 the Veterans' Administration awarded Plaintiff disability benefits at the 100% rate retroactive to February 1999, finding that he was "unable to work due to (his) service connected conditions." (Tr. 132). The ALJ acknowledged that Plaintiff was receiving VA disability benefits,

---

[11]www.rxlist.com/cgi/generic/backofen.htm.

although he misinterpreted the rate of disability as 40%. (Tr. 13).

14.     In July 2000, Plaintiff reported four weeks of partial pain relief following his last facet injection. His physician diagnosed fibromyalgia based on the number an location of trigger points, and mechanical low back pain, probably facet related. (Tr. 211). Facet injections were discontinued "due to widespread nature of pain problem and short duration of benefit." Id. Plaintiff was given a prescription for Zoloft[12], and physical therapy was recommended if it could be obtained in his home town. Id.

15.     Plaintiff was evaluated by Ronald A. Novak, M.D., a pain clinic consultant, on September 27, 2000. (Tr. 208-209). Dr. Novak noted that Plaintiff was moderately obese and very deconditioned, initially panting, grunting, groaning, and appearing to be in severe pain while moving, but able to remain still. Toward the end of the extended visit Plaintiff was calmer and more mobile. On physical examination, Dr. Novak noted diffuse, variable tenderness over the lower thoracic and lumbar spines and the paraspinal muscles, with pain worsening on back flexion/extension, and a positive straight leg raise at 60 degrees. Dr. Novak diagnosed chronic back pain primarily involving the lumbosacral spine, but also in the upper and lower thoracic spine. He recommended freezing or radio frequency lesioning of the involved superior and inferior facet nerves. Dr. Novak also stated that Plaintiff exhibited chronic pain behavior, and recommended pool therapy, biofeedback, pain-behavior modification, physical therapy and a reconditioning program "understanding that he's had therapies before, without benefit." He also provided Plaintiff with a prescription for Lortab-5[13]

_____

[12]Zoloft was discontinued shortly before Plaintiff's administrative hearing due to reported side effects, and replaced with Prozac. (Tr. 204)

[13]An opioid analgesic indicated for relieve of moderate to moderately severe pain. 1999 Physicians' Desk Reference, at 3162.

# V. Analysis

## A. The ALJ erred in his evaluation of Plaintiff's credibility.

16.     The ALJ discounted Plaintiff's credibility, concluding that he exaggerated the degree of pain he experienced. (Tr. 12). Credibility determinations are peculiarly the province of the finder of fact, and will not upset when supported by substantial evidence. **Diaz v. Sec'y of Health & Hum Servs**., 898 F.2d 774, 777, cited in **Kepler v. Chater**, 68 F.3d at 391. "However, `[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" **Huston v. Bowen**, 838 F.2d 1125, 1131, 1133 (footnote omitted) (10th Cir. 1988), cited in **Kepler v. Chater**, 68 F.3d at 391. The ALJ must "articulate specific reasons for questioning the claimant's credibility" where subjective pain testimony is critical. **Kepler v. Chater**, 68 F.3d at 391 (internal quotations omitted). Failure to make credibility findings regarding critical testimony "fatally undermines the [Commissioner's] argument that there is substantial evidence adequate to support his conclusion that claimant is not under a disability." Id. (internal quotations omitted).

17.     I find that many of the conclusions drawn by the ALJ in assessing Plaintiff credibility have tenuous to no support in the record, are based on a misreading of the record or are irrelevant:

-- *Plaintiff has not demonstrated any bowel or bladder dysfunction as a consequence of having a back condition.* (Tr. 12).

Although bowel and bladder dysfunction may be indicative of the severity of certain back conditions, there is no evidence to indicate that such dysfunction is properly considered in the evaluation of Plaintiff's diagnosed conditions, facet arthropathy, mechanical low back pain, chronic back pain and fibromyalgia.

-- *Plaintiff has had facet injections and has used a TENS unit, but insists it has not helped.* Id. *It appears that Plaintiff has benefitted greatly from facet blocks,*

*contrary to his contention that nothing has really helped.* (Tr. 13).

Dr. Novak's note indicates that Plaintiff felt the injections had resulted in immediate and significant relief. (Tr. 208). However, the medical record also indicates that pain relief was temporary and partial[14]. Plaintiff testified that he had had several facet injections to try to block the pain, and that he did use a TENS unit off and on, because " if I use it all the time it . . .doesn't seem to work as good." (Tr. 38).

-- *Plaintiff testified that he must rest frequently and can not do extensive housework.* (Tr. 12).

The ALJ did not point to any testimony or written documentation that contradicted this statement.

-- *Plaintiff testified that his ankles hurt all the time and it is painful to walk.* Id.

The ALJ did not point to any testimony or written documentation that contradicted this statement. The medical record documents that Plaintiff sought medical treatment on three occasions in 2000 for ankle pain and swelling, and has x-ray evidence of degenerative changes in his ankle. (Tr. 219, 214, 212, 216)

-- *Plaintiff has had sustained employment in the past, despite claiming that his back has always hurt.* (Tr. 12).

Plaintiff does have a significant work history. (Tr. 88-89). When initially seeking treatment for back pain in the fall of 1998, he indicated that he had experienced back pain for years, but that the pain had recently worsened. (Tr. 65-66, 179-180). He continued working until

---

[14]Tr. 220 - Considerable residual pain; had partial but lasting relief from past injections; Tr. 215 - 50% pain relief from prior injection; Tr. 213 - Three-weeks pain relief from injections. Currently has significant low back pain and low to mid thoracic pain; Tr. 211 - four weeks partial relief from prior injections.

February 8, 1999. The medical note on that day states in part:

> 34 yo veteran here as walk in today. Awaiting ortho surgery appt.
> Recently been by comp. and pen. Had to quit his job today secondary
> to severe back pain that pt states has been going on for 6 months.
> Now unable to stand all day to perform his job. Pt today is writhing
> in the chair in pain. (Tr. 163).

When evaluated by Dr. Novak on September 27, 2000, Plaintiff indicated that he had
experienced chronic back pain since age 24, which had not become crippling until three years
earlier.

-- *Plaintiff testified that a left hand tremor, noted by the ALJ at the administrative
hearing, was a manifestation of tingling from his elbows to his arms. Although the
complaint of tingling had been recorded in the medical record, the examining
physician indicated it was present only when Plaintiff slept on a flat surface, never
when lying in bed.* (Tr. 12).

At the administrative hearing the ALJ pointed out to Plaintiff that his left hand had a tremor
that seemed to come and go. Plaintiff stated that he had never noticed the tremor before, and
did not know how long it had been present. (Tr. 56). The ALJ then asked if Plaintiff had
ever connected the pain he experienced in his neck with pain in his arms and hands. Plaintiff
responded that he had connected the neck pain to numbness in his hands and forearms, but
not to pain in his hands. (Tr. 56-57). He also stated that the numbness occurred when he laid
flat. (Tr. 58). Dr. Novak recorded Plaintiff's history of numbness/tingling in both upper
extremities from the forearms down which occurred "only when he sleeps on a flat surface,
but . . .never happens when laying in bed." (Tr. 208). I can discern no conflict between
Plaintiff's testimony and the medical record.

-- *Dr. Novak noted that Plaintiff demonstrated definite pain behavior.* (Tr. 13).

Dr Novak did make this statement, which ALJ concluded reflected negatively on Plaintiff's

credibility. Dr. Novak, however, did not indicate that Plaintiff did not experience pain, or that "pain behavior" was equivalent to malingering. Rather, he recommended numerous treatment modalities (See ¶ 15, supra) in an attempt to relieve or reduce pain.

B.   The ALJ erred in applying the Medical-Vocational Guidelines (grids) conclusively.

17.   Credible nonmedical evidence of pain precludes the mechanical application of the grids. **Huston v. Bowen**, 838 F.2d 1125, 1131 (10th Cir. 1988). Accordingly, the ALJ's error in assessing Plaintiff's credibility also undermines his reliance on the grids in assessing Plaintiff's claim at step five of the sequential evaluation process.

## VI.   Recommended Disposition

18.   For these reasons I recommend that the Plaintiff's Motion to Reverse be granted, and that this cause be remanded to the Commissioner for additional proceedings to include the following:

1.   Reassessment of Plaintiff's credibility in accordance with the criteria of **Kepler v. Chater, supra**;

2.   Reassessment of Plaintiff's RFC for sedentary work;

3.   If Plaintiff is not capable of performing the full range of sedentary work because of his nonexertional impairment, the ALJ shall obtain vocational testimony or evidence, as necessary, in evaluating this matter at step five of the sequential evaluation process.

Richard L. Puglisi
United States Magistrate Judge